UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RANDY LAMONT BAUGH,

    Petitioner,

                                                                               Case No: 05-71676
                                                                               HON. AVERN COHN

v.

DANIEL F. QUIGLEY,

    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

This is a habeas case under 28 U.S.C. §2254. Randy Lamont Baugh, ("Petitioner"), filed a pro se petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights and raises two claims detailed below. Respondent argues that Petitioner's claims are procedurally defaulted and lack merit. The Court agrees. For the reasons that follow, the petition will be denied.

### II. Factual Background

The material facts as gleaned from the record follow.

Petitioner's conviction arises out of the shooting death of Jack Marceau on September 14, 1989 outside of a housing project in Pontiac, Michigan. The prosecution theorized that Petitioner shot and killed Marceau during the perpetration of a robbery while Marceau was attempting to purchase narcotics in the Lakeside Projects area. Eyewitness testimony implicated Petitioner as: (1) shooting Marceau during a struggle

outside of Marceau's vehicle; (2) admitting to shooting Marceau; or (3) attempting to get rid of the weapon used to shoot Marceau. Petitioner's defense was two-fold: (1) there was lack of corroborating physical evidence to sustain a conviction; and (2) the eyewitnesses who implicated Petitioner in the murder were biased as they each had a motive to be untruthful about the circumstances surrounding Marceau's death.

### III. Relevant Procedural History

Petitioner was convicted of second degree murder. On April 12, 2004, Petitioner was sentenced to twenty-sixty years' imprisonment.

Petitioner filed a direct appeal raising two issues, as follows:

Claim 1   whether Petitioner received ineffective assistance of counsel when defense trial counsel failed to move for suppression of Nathaniel Franklin's coerced statement; and

Claim 2   whether the trial court violated Petitioner's due process rights by allowing jurors to ask questions of witnesses at trial

The Michigan Court of Appeals denied the claim on the merits and affirmed Petitioner's convictions. People v. Baugh, 2003 WL 22416516 Mich. Ct. App. No. 242142 (per curiam) (October 23, 2003). The Michigan Supreme Court denied leave to appeal. People v. Baugh, 470 Mich. 860 (April 30, 2004).

On April 28, 2005, Petitioner filed the instant petition, raising the same two claims presented to the state appellate courts.

### IV. Standard of Review

Under 28 U.S.C. §2254(d), a petitioner is not entitled to relief in a federal habeas corpus proceeding unless the state court's adjudication of his or her due process claim resulted in a decision that: (1) was contrary to, or involved an unreasonable application

2

of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

"Clearly established federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Furthermore, a federal court may not issue a writ of habeas corpus under the "unreasonable application" clause of 28 U.S.C. §2254(d) "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 365; see also Prince v. Vincent, 538 U.S. 634, 638-39 (2003). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable," as opposed to transforming the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was reasonable. Williams v. Taylor,

529 U.S. at 411.

Therefore, the threshold inquiry in this case is whether the Petitioner seeks to apply a rule(s) of law that was clearly established at the time of his conviction in the state court. See Id. at 412.

## V. Analysis

### A. Claim 1 - Ineffective Assistance of Counsel

Nathaniel Franklin, an eyewitness to Marceau's shooting, made a statement to the police indicating that he saw Marceau drive into the Lakeside Project area. He further stated the following: (1) he saw Petitioner meet Marceau at his car; (2) the two "scuffled' in the car; and (3) Petitioner backed away from the vehicle, pulled out a gun from his pants and shot Marceau. Marceau proceeded to drive away, but only for a few feet until he ran into an object which brought the vehicle to a stop. Franklin testified about the content of his statement at Petitioner's preliminary examination. It is Petitioner's position that this statement was coerced. Accordingly, Petitioner maintains that trial counsel should have filed a suppression motion relative to Nathaniel Franklin's statement. Since no action was taken to suppress the statement, Petitioner claims that his trial counsel was ineffective, thus resulting in a violation of his Sixth Amendment right to counsel and warranting habeas relief.

To prevail on his ineffective assistance of counsel claim, Petitioner must show that the state court's conclusion regarding his claim was contrary to, or an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). See Cathron v. Jones, 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). Strickland established a two-prong test for

4

claims of ineffective assistance of counsel: the Petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687.

To show prejudice under Strickland for failing to file a suppression motion, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to seek suppression of the statement, there is a reasonable probability that the trial court proceeding would have been different. See Hinkle v. Randle, 271 F.3d 239, 245 (6th Cir. 2001).

Petitioner's claim for habeas relief based upon this issue fails for two reasons. First, the premise upon which Petitioner claims that Franklin's statement was coerced is the following preliminary examination testimony:

> Q     Well, you gave him a statement; didn't you?
>
> A     Actually, if I may, may I?
>
> Q     Did you give him a statement?
>
> A     What happened was, the officers came in and they asked me – they said to me that this person is a friend of the Chief at that time and that we gots to find out who did this at no matter what costs. So, do you know and if you do you tell us or else.
>
> Q     So, that's what they said to you?
>
> A     Yes.

(Preliminary Examination Transcript, pg. 33)

The Michigan Court of Appeals held that Mr. Franklin's statement to the police was not coerced, explaining:

> Here, the record fails to demonstrate that Franklin's statement to the police and subsequent testimony were the result of police coercion. At the time Franklin gave his statement to the police, he had been arrested a number of times for various offenses. During his testimony, he acknowledged that he was ambivalent toward the prospect of going to prison and in fact, he viewed prison as "summer camp." However, he also insisted that he did not lie when he said that defendant committed the instant shooting. The record demonstrates that Franklin's testimony was fully developed through cross-examination to show his motives and biases including his relationship with defendant, the number of outstanding charges against him, and the fact that he knew Marceau was a friend of the police chief. We find no indication that the police coerced Franklin into implicating defendant.

2003 WL 22416516 at *2.

The Court agrees with the Michigan Court of Appeals' analysis and conclusion. When allegations of coercion are made relative to a statement given to the police, the state courts evaluate the issue under the totality of the circumstances, as a coerced statement connotes an involuntary statement. Dickerson v. United States, 530 U.S. 428, 434 (2000). The totality of the circumstances in this case, belies a coercion argument. Franklin's troubles with the law reveals another motivation for cooperating with the police by providing a statement about Marceau's shooting (i.e., desire to lessen the ramifications of his past criminal activity). Moreover, his lackadaisical attitude about being incarcerated indicates that he would not necessarily be an individual who would succumb to pressure or coercion by making a false statement since imprisonment is the ultimate punishment for failing to cooperate with or obstructing a police investigation.

Under the deference required under the AEDPA, this Court cannot find the

Michigan Court of Appeals' decision, finding Franklin's statement to be voluntary and not coerced, was an unreasonable application of federal law when it was based on the totality of the circumstances and factors weighed in favor of voluntariness. See Schneckloth v. Bustamonte,, 412 U.S. 218, 226 (1973); see also McCalvin v. Yukins, 444 F.3d 713, 719-20 (6th Cir. 2006). Moreover, factual findings made by the state courts are presumed correct, and the presumption of correctness may be rebutted by the petitioner only with clear and convincing evidence. 28 U.S.C. §2254(e)(1); See e.g. Lorraine v. Coyle, 291 F.3d 416, 422 (6th Cir. 2002). That presumption of correctness extends to factual findings of a state appellate court based on the state trial record. Bowling v. Parker, 344 F.3d 487, 497 (6th Cir. 2003), cert. denied, 543 U.S. 842 (2004), citing Sumner v. Mata, 449 U.S. 539, 546-47 (1981).

Second, in order for Petitioner's ineffective assistance of counsel claim to be substantiated in this case, he must show that a suppression motion would have had merit; and that if the motion had been granted the outcome of his trial court proceedings would have been different. See Hill v. Lockart, 474 U.S. 52, 60 (1985). Since the Court does not find that Franklin's statement was coerced, defense counsel's failure to file a suppression motion would have been futile. United States v. Hanley, 906 F.2d 1116, 1121 (6th Cir. 1990). Even where a motion to suppress is supported by some evidence in the record, the Court presumes that defense counsel was effective if the attorney could reasonably have decided that the filing of a motion to suppress would have been a futile act. Trial counsel is under no duty to file meritless motions; and therefore deficient performance cannot be proven. See Knapp v. White, 296 F.Supp.2d 766, 782

7

(E.D. Mich. 2003). Petitioner is therefore not entitled to habeas relief on this ground.

## B. Claim 2 - Juror Questioning

Petitioner claims that his due process rights were violated because the trial court allowed jurors to question the witnesses at trial.[1] Respondent contends that Petitioner's claim is procedurally defaulted because Petitioner failed to preserve these issues in the state trial court by failing to object either to the trial court's instruction which allowed jurors to ask questions or to the specific questions themselves. The Michigan Court of Appeals found that the issue was unpreserved, reviewed it for plain error, and concluded no error existed. See 2003 WL 22416516 at *3.

### 1. Procedural Default

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas

---

[1] The following questions were handwritten by the respective jurors and given to the judge, who read the questions to the witness:

    Q    "Which way on Howard McNeil was the victim's car traveling, if you recall?
    A    I don't recall. But I do have the accident report with me that indicates that.
(Trial Transcript, Vol. I, pg.177)

    Q    "[W]ere there any drugs being used during the drinking party confession?
    A    No.
(Trial Transcript, Vol. I, pp. 202-03)

    Q    "Did you hear a gunshot?"
    A.    No.
(Trial Transcript, Vol. III, pg. 150)

8

review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Such a default may occur if the state prisoner files an untimely appeal, if he fails to present an issue to a state appellate court at his only opportunity to do so, or if he fails to comply with a state procedural rule that required him to have done something at the trial court level to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. Id. at 752; Rust v. Dent, 17 F.3d 155, 160 (6th Cir. 1994). Application of the cause and prejudice test may be excused if a Petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." Rust,17 F.3d at 162; Murray v. Carrier, 477 U.S. 478 496 (1986).

Here, the fact that the Michigan Court of Appeals engaged in plain error review of Petitioner's claims does not constitute a waiver of the state procedural default. See Seymour v. Walker, 224 F.3d 542, 557 (6th Cir. 2000). Instead, this Court should view the Michigan Court of Appeals' review of Petitioner's claims for plain error as enforcement of the procedural default. See Hinkle, 271 F.3d at 244. A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. Coleman, 501 U.S. at 750; see also Gravely v. Mills, 87 F.3d 779, 784-85 (6th

9

Cir. 1996)

With respect to Petitioner's juror questioning claim, he has neither alleged nor established cause to excuse his procedural default. As such, the claim is barred from further review due to procedural default. See Smith v. Murray, 477 U.S. 527, 533 (1986); Long v. McKeen, 722 F.2d 286, 289 (6th Cir. 1983).

## 2. Prejudice

Even assuming Petitioner could show cause to overcome his default, Petitioner cannot establish prejudice.

The trial court judge explained the procedure for juror questioning in this case was as follows:

> The Court: I should advise all of you who are here that we will shortly be bringing up the jurors . . . Now, Mr. Sabotta and Mr. Townsend, I would advise both of you that we do permit jurors to take notes. We also permit jurors to ask questions, so that jury will be advised that they will have an opportunity to take those notes, and they will have an opportunity to ask questions.
>
> The way they ask questions, as I think both of you know, having tried cases in this courtroom, is that once we have saturated all the questions that both of you wish to ask a particular witness, we will then turn it over to the jury and ask them to write down their questions, if they have not already done so.
>
> We tell them to fold that question over to insure that none of their fellow jurors can see the questions, because if they can see the question, they have already commenced their deliberations. They will then pass that question down to the court reporter here, she will give it to me, I will review the question,

> and then we will review it with both of you, and we'll decide one of three things.
>
> We'll decide whether or not that particular question is relevant. If the question is determined to be relevant, then we will decide whether or not this is a witness to whom that question should be addressed.
>
> If we decide that this is not the witness to whom it should be addressed, but there's someone else it can be addressed to some time later, we will advise the jury that question will be asked to someone else who would be more competent to testify as to that particular question.
>
> And fourth, if it's not relevant – or third, if it's not relevant, we will set it aside and we tell the jury that in every human situation there are questions that we would like to ask, but we simply can't ask, and I will state that if they have a question in mind they'd like to ask, they must set that question aside and not consider it in their deliberations or their thought processes as to the crime charged.

(Trial Transcript, Vol. I, pp. 7-8; see also pp. 115-117).

Here, the trial court's decision to ask jurors questions did not violate Petitioner's right to a fundamentally fair trial, for two reasons. First, the manner in which the trial court in this case allowed for juror questioning consisted of procedural safeguards in order to circumvent any due process problems. As noted by the Court of Appeals, the questions were submitted in writing to the trial court and were reviewed for their admissibility by the trial court and counsel outside of the presence of the jury and off the record before presented to the witness. These are the type of safeguards which guard against due process concerns. See Fisher v. Hurley, 2007 WL 188563, *13 (S.D. Ohio

11

Jan. 22, 2007) (noting that "(1) requiring the jurors to submit their questions in writing to the court, whereupon the judge could review and exclude improper questions, (2) providing counsel an opportunity to object at sidebar, thereby eliminating the danger that a juror would be affronted by an objection, and (3) specifying the precise time at which jurors should submit questions to prevent interference with attorney questioning and courtroom decorum.").

Second, "the practice of allowing jurors to question witnesses is a matter committed to the discretion of the trial court." Id. at *14. It is well-established that alleged trial court errors in the application of state procedure or evidentiary law are generally not cognizable as grounds for federal habeas relief. Pulley v. Harris, 465 U.S. 37, 41 (1984); Serra v. Michigan Department of Corrections, 4 F.3d 1348, 1354 (6th Cir. 1993). Based upon the foregoing, the Court cannot find that the Michigan Court of Appeals engaged in an unreasonable application of federal law as determined by the United States Supreme Court relative to this issue.

Further, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. Schlup v. Delo, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficient." Bousley v. United States, 523 U.S. 614, 623 (1998). Therefore Petitioner is not entitled to a writ of habeas corpus on this claim.

## VI. Conclusion

For the reasons stated above, Petitioner is not entitled to habeas relief on his claims. Accordingly, the petition is **DENIED**. This case is **DISMISSED**.

**SO ORDERED**.

          s/Avern Cohn
          AVERN COHN
          UNITED STATES DISTRICT JUDGE

Dated: August 21, 2007

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record and Randy Baugh, #409435, Newberry Correctional Facility, 3001 Newberry Ave., Newberry, MI 49868 on this date, August 21, 2007, by electronic and/or ordinary mail.

          s/Julie Owens
          Case Manager, (313) 234-5160